UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL SOUTHARD, on behalf of
himself and all others similarly situated,                                    Plaintiff,

v.                                                                      Civil Action No. 3:21-cv-607-DJH-CHL

NEWCOMB OIL CO., LLC,                                                          Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

In an unopposed motion, Plaintiff Michael Southard, on behalf of himself and all others similarly situated, seeks final approval of his class-action settlement with Defendant Newcomb Oil Co., LLC. (Docket No. 72) The Court held a final fairness hearing on August 9, 2024, and heard from the parties in support of the settlement. (D.N. 73) For the reasons set forth below, the Court will grant Southard's motion for final approval.

**I.**

Newcomb Oil operates convenience stores throughout Kentucky called "Five Star Food Marts." (D.N. 70-2, PageID.640 ¶ 9) Southard brought this class action on behalf of current and former Five Star employees, alleging that Newcomb Oil violated their rights under the Kentucky Wages and Hours Act and Kentucky common law. (D.N. 1-2) Specifically, the complaint includes claims of (1) failure to pay for all hours worked, including overtime under Ky. Rev. Stat. § 337.285; (2) failure to provide meal and rest periods under Ky. Rev. Stat. §§ 337.355, 337.365, and 446.070; (3) untimely payment of wages and unlawful withholding of wages under Ky. Rev. Stat. §§ 337.055 and 337.060; (4) failure to furnish accurate statements of wage deductions under Ky. Rev. Stat. § 337.070; and (5) unjust enrichment. (D.N. 1-2)

1

Following discovery and a settlement conference with U.S. Magistrate Judge Colin H. Lindsay, the parties reached a settlement agreement in December 2023. (D.N. 62) Southard then filed an unopposed motion for preliminary approval of his class-action settlement with Newcomb Oil (D.N. 70), which the Court granted on May 10, 2024. (D.N. 71) The Court conditionally certified the following settlement class:

> [A]ll current and former hourly non-exempt Five Star convenience store employees, including but not limited to customer service representatives, store attendants, clerks, cashiers, GO Team employees, money counters, inventory team members, or other employees with similar job duties, employed by Defendant in Kentucky at any time from November 9, 2013 until December 16, 2023.

(*Id.*) In its May 10, 2024 Order, the Court also approved and directed the distribution of the parties' Notice of Class Action Settlement to class members; appointed class counsel; confirmed a third-party settlement administrator; and set an implementation schedule for the claims process and final approval of the settlement. (*Id.*)

Under the parties' settlement agreement, Newcomb Oil agreed to pay "a non-reversionary Gross Settlement amount of $1,500,000.00, plus the employer's portion of payroll taxes on settlement awards to Participating Class Members, which [Newcomb Oil] has agreed to pay separately." (D.N. 72-2, PageID.732 ¶ 4) The "Net Settlement Fund" is the Gross Settlement Amount less the service payment to the class representative, class counsel's fee award and litigation expenses, and the settlement administrator's fees and costs. (D.N. 70-2, PageID.643–44 ¶ 21) The Net Settlement Fund is "estimated to be $881,848.19." (D.N. 72-6, PageID.757 ¶ 14)

Class Members who did not opt out of the settlement will "be eligible to receive a share of the Net Settlement Fund based on the number of hours" they "worked for Defendant in eligible positions between November 9, 2013 and December 16, 2023." (D.N. 70-2, PageID.645 ¶ 26) Additionally, class members "who d[id] not timely request exclusion will release

Defendant . . . from any and all claims that Plaintiff or the Class Members have, or could have, made against Defendant in this action." (D.N. 70-1, PageID.616 (citing D.N. 70-3, PageID.657)) Checks that would have gone to non-participating class members "will instead be paid to a charity." (*Id.*)  Checks to participating class members that are "uncashed and cancelled after the void date" will "likewise be paid to charity." (D.N. 70-3, PageID.657)

The Court-approved notice of the parties' settlement was sent to all 13,764 class members on June 3, 2024.  (D.N. 72-6, PageID.757 ¶ 7)  The settlement administrator received two requests for exclusion but no objections or disputes.  (*Id.* ¶¶ 11–13)

## II.

Much of the final analysis will be the same as at the preliminary stage, though the Court now has some additional information before it.

**A.     Approval of Settlement**

Pursuant to Federal Rule of Civil Procedure 23, the Court may approve a class-action settlement "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate" based on the following factors:

> (A)   the class representatives and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into account:
>    (i)    the costs, risks, and delay of trial and appeal;
>    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The rule largely encompasses the factors that have been employed by the Sixth Circuit:

3

> (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

*Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (internal quotation marks omitted) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition to the seven factors listed above, the Sixth Circuit "ha[s] also looked to whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 (6th Cir. 1983)).

The Sixth Circuit does not appear to have considered the new version of Rule 23(e)(2). Since the amendment, courts within the Sixth Circuit have been applying both sets of factors. *See, e.g.*, *In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 3:18-CV-825-BJB, 2023 WL 5997294, at *2 (W.D. Ky. Sept. 15, 2023) (citing *Doe*, 925 F.3d at 894–95); *Elliott v. LVNV Funding, LLC*, No. 3:16-CV-675-RGJ, 2019 WL 4007219, at *7 (W.D. Ky. Aug. 23, 2019) (citing *Peck v. Air Evac EMS, Inc.*, No. CV 5: 18-615-DCR, 2019 WL 3219150, at *5 (E.D. Ky. July 17, 2019)). Given their substantial overlap, the two sets can be considered together.

### 1. Adequate Representation/Amount of Discovery/Counsel and Representatives' Opinions

This case has been litigated for nearly six years[1], with discovery throughout, and counsel on both sides have extensive experience in similar cases. (D.N. 71, PageID.689–90) These factors,

---

[1] Southard first filed a class-action complaint against Newcomb Oil in the Jefferson Circuit Court in November 2018, which Newcomb Oil removed to this Court the following month. *Southard v. Newcomb Oil*, No. 3:18-cv-803-CRS (W.D. Ky. Dec. 6, 2018), ECF No. 1. Senior U.S. District Judge Charles R. Simpson III later remanded the case to Jefferson Circuit Court, which Newcomb Oil successfully challenged on appeal. *Id.*, (W.D. Ky. Nov. 12, 2019), ECF No. 30. Following the appeal, Judge Simpson ultimately remanded the case again, which the Sixth Circuit affirmed.

along with the opinions of counsel and Southard—all of whom favor the settlement—support final approval. *See Doe*, 925 F.3d at 899.

2. **Arm's-Length Negotiations/Risk of Fraud or Collusion**

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary," and here, there is no such evidence. *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (internal quotation marks omitted) (quoting *UAW v. Gen. Motors, Corp.*, 05-CV-73991-DT, 2006 WL 891151, at *21 (E.D. Mich. Mar. 31, 2006)). As noted above, the parties reached the instant settlement agreement with the assistance of Magistrate Judge Lindsay. (D.N. 62) "[T]here appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a neutral third party mediator[.]" *In re Flint*, 571 F. Supp. 3d at 780 (internal quotation marks omitted) (alterations in original) (quoting 4 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 13:50 (6th ed. 2024)); *see Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."). Accordingly, these factors also support approval.

3. **Adequacy of Relief**

    a. **Costs, Risks, and Delay of Trial and Appeal/Complexity, Expense, and Likely Duration of the Litigation/Likelihood of Success on the Merits**

"[W]age and hour class and collective actions . . . are inherently complex and time-consuming," *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) (citing *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947,

---

*Id.* (W.D. Ky. Aug. 4, 2021), ECF No. 39. Newcomb Oil then removed the case to this Court a second time, on September 27, 2021. (D.N. 1)

5

at *7 (S.D. Ohio July 11, 2014)), and this case is no exception. The parties have already invested substantial time and money litigating this case, and proceeding to trial would significantly increase the required investment. Southard also "recognizes that success [on the merits] is not guaranteed." (D.N. 70-2, PageID.646 ¶ 30) In sum, these factors favor approval.

### b.   Method of Distribution

This factor supports approval when "class members" are not required to "submit claim forms or other documents to participate in the recovery." *See McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 663 (N.D. Ohio 2023). The distribution process here imposes no such requirement; rather, class members will receive a check unless they opt out. (D.N. 70-2, PageID.645 ¶ 26) Additionally, the settlement administrator mailed the notices of settlement to "all 13,764 Settlement Class Members," and only 301 were "undeliverable with no forwarding address, where no new addresses could be found through skip trac[ing]." (D.N. 72-6, PageID.757 ¶¶ 7, 10) Thus, this factor also justifies approval. *See Green v. FCA US LLC*, No. 20-13079, 2022 U.S. Dist. LEXIS 140553, at *6–7 (E.D. Mich. Aug. 8, 2022) (finding notice sufficient where "approximately 98% of the class . . . received postcards notifying them of the settlement").

### c.   Attorney Fees

Class counsel seek $525,000 in attorney fees and $15,101.81 in costs.[2] (D.N. 72-6, PageID.762) The Sixth Circuit recognizes two methods for measuring "the fairness of an attorney's award": the lodestar method and the percentage-of-the-fund method. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). "The lodestar method better accounts

---

[2] At the time of filing the motion for final approval, class counsel advised that they had incurred $13,651.81 in litigation costs. (D.N. 72-2, PageID.741 ¶ 32) During the final fairness hearing, class counsel reported that they had incurred $1,450 in additional costs. Class counsel's total costs of $15,101.81 are well below the $30,000 ceiling set out in the settlement agreement. (D.N. 70-3, PageID.656)

for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *In Re Flint Water Cases*, 63 F.4th 486, 495 (6th Cir. 2023) (internal quotation marks omitted) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "Courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and the unique circumstances of the actual cases before them.'" *In re Flint*, 63 F.4th at 495 (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)). But "[d]istrict court decisions must include 'a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee.'" *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516).

The percentage-of-the fund method is consistent with the fee arrangement between Southard and class counsel (*see* D.N. 72-6, PageID.762), and it is generally "the preferred method for common fund cases." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (citing *Rawlings*, 9 F.3d at 516). Plus, the risk that "a percentage award may . . . provide incentive for attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested" is not present here since counsel have invested nearly six years in this litigation. *Gascho*, 822 F.3d at 279 (internal quotation marks omitted) (quoting *Rawlings*, 9 F.3d at 516). The Court will therefore apply the percentage-of-the fund method.

The Sixth Circuit has identified six factors relevant to the attorney-fee inquiry under either method:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order

7

> to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Id.* at 280 (quoting *Moulton*, 581 F.3d at 352). These factors support approval of class counsel's requested fee in this case. First, the value of the benefit to class members is significant, considering "that success [on the merits] is not guaranteed." (D.N. 70-2, PageID.646 ¶ 30) Class members who did not opt out will receive $64.07 on average, although the highest individual payment is more than $1,000. (D.N. 72-6, PageID.758 ¶ 15) Class counsel have extensive experience in this type of litigation (D.N. 72-2, PageID.732–37 ¶¶ 6–9) and provided their services on a contingent basis. (*Id.*, PageID.741 ¶ 27) This case is complex, and society has a strong interest in rewarding attorneys who take such cases and "achieve a result that the individual class members probably could not obtain on their own," particularly in the wage-and-hour context. *Est. of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021) (citing *Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017), *report and recommendation adopted*, No. 2:15-CV-2701, 2017 WL 3142403 (S.D. Ohio July 25, 2017)). In sum, the factors indicate that the requested fee is reasonable.

A lodestar cross-check, although optional, also supports class counsel's fee request. *See In re Flint*, 63 F.4th at 495 (noting that "courts often select one method and use the other as a cross-check"). Class counsel submitted documentation showing a lodestar of $853,415, with an effective hourly rate of $437.90. (D.N. 72-2, PageID.739–40) Dividing the requested fees and costs by the lodestar results in a negative multiplier of 0.63, meaning that the requested fees are less than the lodestar amount. "Such a negative multiplier supports the supports the reasonableness of the fees." *Williams v. CG-HHC, Inc.*, No. 5:22-CV-1003, 2024 WL 1514587, at *3 (N.D. Ohio Apr. 8, 2024) (citing *Macaluso v. Zirtual Startups, LLC*, No. 2:19-CV-3616, 2021 WL 3639665 (S.D. Ohio Aug. 17, 2021)).

Finally, the percentage sought is not unreasonable. The proposed award of attorney fees and costs in this case represents 36% of the total settlement amount. (D.N. 72-6, PageID.762) In the Sixth Circuit, reasonable "[a]ttorney[-]fee[] awards typically range from 20 to 50 percent of the common fund." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) (collecting cases). Thus, the award requested here falls within the acceptable range.

### d.   Other Agreements

The settlement agreement states, "This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements proposed or otherwise, written or oral, concerning the subject matter hereof." (D.N. 70-3, PageID.663–64) Accordingly, this factor also favors approval.

### 4.   Equitable Treatment of Class Members/Preferential Treatment of Named Plaintiffs

Under the parties' settlement agreement, Southard will receive "a $10,000 Service Award, for his role in prosecuting this lawsuit on the behalf of all Class Members." (*Id.*, PageID.672) An incentive payment generally "does not raise a red flag" in the settlement-approval inquiry "because the class representative and class member are not similarly situated in regard to . . . the incentive payment: the class representative did extra work and took extra risk to earn that." *Newberg on Class Actions* § 13:56. Requests for incentive awards are nevertheless "scrutinized carefully" in light of the concern that such payments "may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)).

The Court previously observed that the proposed service award "exceeds the threshold suggested by Sixth Circuit caselaw." (D.N. 71, PageID.694 (citing *Strano v. Kiplinger Washington Eds., Inc.*, 646 F. Supp. 3d 909, 913 (E.D. Mich. 2022) (collecting cases))) "[C]onsiderable time"

9

spent by a plaintiff in protecting the class's interests can justify a heightened service award if such efforts are "supported by . . . [documentation that] quantif[ies the plaintiff's] invested time." *Moeller v. Week Pub'ns, Inc.*, 646 F. Supp. 3d 923, 927 (E.D. Mich. 2022).

In light of the substantial service award, the Court directed Southard to "submit thorough documentation of his time spent on the litigation." (D.N. 71, PageID.694–95 (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016)) With the motion for preliminary approval, Southard submitted a declaration attesting to "contribut[ing] approximately 75 hours of [his] own time to the litigation of these claims." (D.N. 70-4, PageID.681 ¶ 8) In support, class counsel submitted their billing entries, which "reflect[] . . . 21.2 hours of attorney time that involved [Southard] directly." (D.N. 72-2, PageID.742 (citing D.N. 72-5)) And class counsel confirmed at the final fairness hearing that Southard's 21.2 hours of attorney time, plus the time Southard spent working on the case by himself, equals approximately 75 hours. (*See also* D.N. 72-2, PageID.742 ¶ 37 (describing Southard's work on this case))

In addition, although the service award is significant, it is not excessive per se, *see, e.g.*, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913–14 (S.D. Ohio 2001) (collecting cases), and the relief to unnamed class members will not be "perfunctory," *Vassalle*, 708 F.3d at 756, but based on the number of hours they worked for Newcomb Oil in "eligible positions" during the relevant time period. (D.N. 70-2, PageID.645 ¶ 26) Southard's service award is therefore reasonable and supported by documentation.

     **5.**     **Reaction of Absent Class Members**

As noted earlier, out of 13,764 class members, none objected to the proposed settlement. (D.N. 72-6, PageID.757 ¶ 11) "[T]he fact that not one class member objected to the settlement

10

agreement . . . . weighs heavily in favor of final approval." *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-CV-00084-GNS, 2021 WL 2941985, at *4 (W.D. Ky. July 13, 2021) (citation omitted).

### 6. Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits" generally "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). This final factor thus also supports approval.

### B. Certification for Settlement Purposes

The Court previously granted conditional certification for settlement purposes. (D.N. 71, PageID.700) There is no indication that any of the factors supporting certification have changed since that ruling, so certification for settlement purposes is appropriate. *See* Fed. R. Civ. P. 23(a), (b)(3).

### C. Notice to Class Members

Rule 23 requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously approved the form and contents of the notice and directed that it be sent to class members via first-class mail or email. (D.N. 71, PageID.700) The notice process appears to have been successful, as nearly ninety-eight percent of class members received notice. (D.N. 72-6, PageID.757 ¶ 10 (explaining that the 13,764 notices mailed, only 301 were ultimately deemed undeliverable)) The Court therefore finds the notice procedure fair, reasonable, and adequate. *See Green*, 2022 U.S. Dist. LEXIS 140553, at *6-7.

11

**D.     Payment to Settlement Administrator**

Based on the declaration submitted by Emilio Cofinco of CPT Group, Inc., the settlement administrator appears to have performed its duties in accordance with the settlement agreement and the Court's prior Order.  (D.N. 72-6; *see* D.N. 71; D.N. 70-3)  Thus, the Court will approve the award to CPT Group, Inc.

### III.

For the reasons explained above, the Court finds the parties' settlement to be fair reasonable, and adequate.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Southard's unopposed motion for final approval (D.N. 72) is **GRANTED**.

(2)     The Court adopts the defined terms in the Settlement Agreement.

(3)     The following class is certified for settlement purposes only:

> All current and former hourly non-exempt Five Star convenience store employees, including but not limited to customer service representatives, store attendants, clerks, cashiers, GO Team employees, money counters, inventory team members, or other employees with similar job duties, employed by Defendant in Kentucky at any time from November 9, 2013, until December 16, 2023.

(4)     The Court confirms the appointment of Michael Southard as Class Representative and approves the $10,000 service award to Southard as set out in the Settlement Agreement.

(5)     The Court confirms the appointment of Schneider Wallace Cottrell Konecky LLP and Kaplan Johnson Abate & Bird LLP as Class Counsel and approves their request for $525,000 in attorney fees and $15,101.81 in litigation costs.

(6) The Court finds that as of Effective Date, as defined in the Settlement Agreement, each and every class member who did not submit a timely and valid request for exclusion has waived and released claims as set forth in the Settlement Agreement and the Notice of Class Action Settlement.

(7) The Court finds that CPT Group, Inc. is entitled to $69,500 for settlement administration.

(8) The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the settlement administrator to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement.

(9) This matter is now **DISMISSED** with prejudice, **STRICKEN** from the Court's docket, and **CLOSED**. The Court retains jurisdiction to enforce the terms of the settlement, including the payment of the settlement fund.

September 23, 2024

David J. Hale, Judge
United States District Court